UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SEAN SMITH & ERIN WRONA, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | |
| FEDERAL TITLE & ESCROW COMPANY, et al., | ) ) ) ) | Civil Case No. 17-cv-01580 (RCL) |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

Now before the Court is the partial motion to dismiss [ECF No. 9] by Defendants Close It! Title Services, Inc ("Close It!") d/b/a Federal Title & Escrow Company ("Federal Title"), Todd Ewing, and Melina Schifflett (collectively "Federal Title Defendants") and the plaintiffs' Motion for Extension of Time to Serve Certain Defendants [ECF No. 16]. Upon consideration, the Federal Title Defendants' motion is **GRANTED IN PART** and **DENIED IN PART** and the plaintiffs' motion is **DENIED AS MOOT**. For additional reasons outlined below, the Court dismisses the case *in toto* without prejudice.

I.   Background[1]

Plaintiffs Sean Smith and Erin Wrona ("Plaintiffs") are married residents of the District of Columbia. ECF No. 1, at ¶ 5. In May of 2017, the couple entered into a sales contract to purchase a home located at 3673 Upton Street, N.W., Washington, D.C. 20008 for $1,738,750.00. *Id*. at ¶ 15. To assist with closing, they contracted with Federal Title, a title company organized under the

---

[1] The recited facts are taken from the plaintiffs' complaint, which for the purpose of the motion to dismiss, the court accepts as true.

laws of Washington, D.C. with its principal place of business also located in Washington, D.C. *Id.* at ¶¶ 7, 15.

On May 4, 2017, Melina Schifflett, a settlement coordinator with Federal Title, reached out to Plaintiffs instructing the couple to wire $200,000 to Federal Title as an earnest money deposit. *Id.* at ¶¶ 17, 18. The couple complied and received an email confirmation from Federal Title confirming the money was received. *Id.* at ¶¶ 18-19. Several days later, Plaintiffs received an email forwarding a request from Schifflett with instructions for wiring the remaining balance (shown in the email as $1,572,097.70) to a Chase bank account in the name of Federal Title with further credit to JMZ Equities, LLC, a Florida limited liability company owned by Jeff Zorbo.[2] *Id.* at ¶¶ 21-22. Prior to completing the transaction, Smith reached out to Schifflett to ask why the bank account number was different from the account where he wired the deposit. *Id.* at ¶ 24. Schifflett explained that Federal Title used different accounts for different amounts and Smith moved forward with the wire transfer. *Id.* at ¶ 26. The following day, Plaintiffs received an email from Schifflet confirming that their funds had been received. *Id.* at ¶ 27.

On June 19, 2017, Plaintiffs reported to Federal Title's offices to close the transaction. *Id.* at ¶ 31. The closing would be conducted by Todd Ewing, founder of Federal Title and a licensed attorney. *Id.* at ¶¶ 8, 32. Midway through closing, Ewing inquired about Plaintiffs wiring the remaining balance on the total purchase price. *Id.* at ¶ 34. When Plaintiffs told Ewing that the funds had already been wired, Ewing left the room to confer with other Federal Title personnel. *Id.* at ¶ 35. At first, Ewing told the Plaintiffs that their email had been hacked and that the only way to close the transaction would be to come up with an additional $1.57 million. *Id.* at ¶¶ 36-

---

[2] JMZ Equities, LLC and Jeff Zorbo are named defendants in this case that have yet to be served. They are the subject of Plaintiffs' Motion for Extension of Time to Serve Certain Defendants.

37. Distraught and yet determined to close the deal, Plaintiffs and their family wired the additional funds. *Id*.

The FBI was contacted immediately, and it was determined that the money the Plaintiffs previously wired had been wired out of the Chase bank account to which they sent the money. *Id*. at ¶ 38. Several days later, Ewing contacted Smith and stated that it was Federal Title's email, not that of the Plaintiffs, that was hacked. *Id*. at ¶ 39. Someone had commandeered Federal Title's computer services, learned about Plaintiffs' transaction, and sent, from Schifflett's email account, the wiring instructions that led to the theft of Plaintiffs' funds. *Id*.

Plaintiffs have yet to recover the $1.57 million that was wired for the home and seek relief in this Court. *Id*. at ¶ 40. Specifically, Plaintiffs allege: (i) violations of the Racketeering Influenced and Corrupt Organizations Act ("RICO") against all defendants; (ii) conversion against all defendants; (iii) civil conspiracy against all defendants; (iv) negligence against the Federal Title Defendants; (v) breach of contract against Federal Title and Close It!; (vi) breach of implied covenant of good faith and fair dealing against Federal Title and Close It!; (vii) breach of fiduciary duty against Federal Title, Close It!, and Ewing; and (viii) legal malpractice against Ewing.

## II. Defendants' Partial Motion to Dismiss

The Federal Title Defendants move, pursuant to Federal Rule of Civil Procedure Rule 12(b)(6), to partially dismiss Plaintiffs' complaint for failure to state a claim as to certain causes of action against certain parties. Specifically, the Federal Title Defendants seek to dismiss the causes of action related to RICO, conversion, civil conspiracy, and legal malpractice. For the reasons outlined below, the Court need only address the motion as it relates to the RICO claim.

### A. Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). When considering a motion to dismiss under Rule 12(b)(6), "the court must assume 'all the allegations in the complaint are true (even if doubtful in fact),' and the court must give the plaintiff the benefit of all reasonable inferences derived from the facts alleged.'" *Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 17 (D.C. Cir. 2008) (internal citations omitted).

**B.     The RICO Claim**

A violation of § 1962(a) of the RICO Act consists of four elements: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *W. Assocs. Ltd. P'ship v. Mkt Square Assocs.*, 235 F.3d 629, 633 (D.C. Cir. 2000) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). Because Plaintiffs fail to allege sufficient facts to plausibly plead a *pattern of racketeering activity*—RICO's third element—the claim must be dismissed.

To show that a *pattern of racketeering activity* exists, RICO requires at least two predicate criminal racketeering acts over a ten-year period. *See* 18 U.S.C. § 1961(5). The Supreme Court has further required that these predicate acts show elements of "relatedness" and "continuity." *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). For the relatedness element, the criminal acts must share "similar purposes, results, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics." *Id* at 240. Continuity may be proved by establishing either a "closed period of repeated conduct" or a threat of future criminal activity. *Id*. at 241. Although meeting these requirements is essential to stating

a RICO claim, the D.C. Circuit "continues to endorse a case-by-case, fact-specific approach" that is "fluid, flexible, and commonsensical, rather than rigid or formulaic." *W. Assocs.*, 235 F.3d at 637.

While it is true that depending on the specific circumstances a single scheme may suffice for purposes of RICO, *H.J. Inc*, 490 U.S. at 240, the number of schemes alleged remains a useful consideration. *W. Assocs.*, 235 F.3d at 634. If a plaintiff alleges only a single scheme, a single injury, and few victims, it is "virtually impossible for plaintiffs to state a RICO claim." *Edmondson & Gallagher v. Alban Towers Tenants Ass'n*, 48 F.3d 1260, 1265 (D.C. Cir. 1995). And courts are wary of "vain attempt[s] to make a RICO claim seem more viable by parsing one scheme into multiple schemes." *See W. Assocs.*, 235 F.3d at 635. In *Western Associates*, for example, a plaintiff tried to state a RICO by separating eight years of alleged misrepresentations of expected costs and profits by a partner on a real estate deal into "four separate but related schemes to defraud [the other partners]." *Id*. at 631–32. The D.C. Circuit found the plaintiff's "subdivision of [the defendant's] alleged fraudulent activity [] unavailing because the four schemes [were] so similar in nature and purpose (i.e., they involve[d] contested bookkeeping entries), and they resulted in a single harm rather than separate injuries." *Id*. at 635.

The type of racketeering activity may also be relevant to the determination of whether a pattern exists. *See id.* at 636–37. "Rico claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Id*. at 637 (quoting *Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 20 (1st Cir. 2000)). This scrutiny is warranted because "[i]t will be the unusual fraud that does not enlist the mails and wires in its service at least twice."

5

*Al-Abood ex rel. Al-Abood v. El-Shamari*, 217 F.3d 225, 238 (4th Cir. 2000); *see also U.S. Textiles, Inc. v. Anheuser-Busch Cos., Inc.*, 911 F.2d 1261, 1268 (7th Cir. 1990).

Here, the predicate racketeering activity alleged by Plaintiffs is wire fraud. *See* ECF No. 12, at 8. And, therefore, the Court examines Plaintiffs' RICO claim with the enhanced scrutiny described above. Plaintiffs are correct that they have alleged "fraudulent emails and wiring instructions tricking Plaintiffs into wiring the funds for their dream home into the hands of the [defendants] . . . and the multiple instances of wire fraud" leading to the wired funds disappearance. ECF No. 12, at 9. But boiled down, all of this amounts to only a single scheme—a fraud to steal the $1.57 million paid by Plaintiffs for their new home. *See W. Assocs.*, 235 F.3d at 263 ("For the term 'scheme' to retain any utility, it cannot be so easily invoked that it allows such closely related [] misrepresentations involving a single project to be considered distinct schemes."). Moreover, Plaintiffs have not alleged any injury apart from this money wired to the Chase account, nor have they alleged any victims besides themselves. Despite Plaintiffs' attempts to slice it up into a more appetizing RICO claim, Plaintiffs' complaint alleges but a single scheme, a single injury, and few victims. *See Edmonson*, 48 F.3d at 1265. Plaintiffs failed to plead a *pattern of racketeering activity*, and as such, their RICO claim must be dismissed.

    C.    **The Remaining Claims in the Complaint**

The Plaintiffs alleged eight counts in their pleading: seven state law claims and one federal claim. Complete diversity of citizenship does not exist between Plaintiffs and the defendants, as at least Plaintiffs, Close It!, and Federal Title are citizens of the District of Columbia. The plaintiffs' presence in federal court, therefore, rests on supplemental jurisdiction, which permits a federal court to extend its jurisdiction to claims properly appended to a claim falling within its original jurisdiction. *See* 28 U.S.C. § 1367(a). In the present case, the claim falling within this

Court's original jurisdiction was the plaintiffs' RICO claim; this claim has now been dismissed. Thus, with the explicit permission of Congress, this Court declines to hear the remaining state law claims. *See* 28 U.S.C. § 1367(c).

By statute, this Court "may decline to exercise supplemental jurisdiction over a claim . . . if the district court has dismissed all claims over which it has original jurisdiction." *Id*. "[I]n the usual case in which all federal-law claims are dismissed before trial, the balance of factors to be considered under the [supplemental] jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). At this early stage of proceedings before discovery has commenced, the Court finds that these factors do in fact weigh in favor of declining jurisdiction and allowing these issues of purely D.C. law to be determined by the body that knows them best—the D.C. courts.

The Court declines to exercise jurisdiction over the remaining claims in Plaintiffs' complaint. There being no live claims remaining before the Court, the remainder of the Federal Title Defendants' motion to dismiss and Plaintiffs' Motion for Extension of Time to Serve Certain Defendants [ECF No. 16] are denied as moot.

### III. Conclusion

For the reasons stated herein, the Court dismisses Plaintiffs' RICO claim pursuant to Federal Rule of Civil Procedure 12(b)(6) and declines to exercise jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367(c). Additionally, Plaintiffs' Motion for Extension of Time to Serve Certain Defendants is **DENIED AS MOOT**. The Plaintiffs' complaint is **DISMISSED**

**WITHOUT PREJUDICE** and Plaintiffs should feel free to refile in the D.C. Courts. An order consistent with this holding accompanies this opinion.

DATE: 4/20/18

_____
Royce C. Lamberth
United States District Judge